IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

    v.

                                                      6:21CR06038-001
                                                     6:23CR06085-001

CHRISTOPHER TINDAL,

        Defendant.

_____

## **DEFENDANT'S PRE-SENTENCE MEMORANDUM**

      Defendant Christopher Tindal, through counsel, submits this memorandum to assist the Court in its sentencing responsibility pursuant to 18 U.S.C. §3553(a). Mr. Tindal does not dispute the calculation set forth in the Revised PSR dated July 21, 2023. Defendant respectfully asserts that given the unique nature and circumstances of this case, this court should grant an aggregate sentence of no more than 60-months. Such a sentence would be sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## **Background**

      Christopher Tindal is 29 years old and has struggled with mental health issues for most of his life. Unfortunately, mental health struggles run in his family. As a child, his older brother would often hurt himself and act in an aggressive, violent manner. Sometimes that aggressiveness would result in fights with Christopher. These physical fights would sometimes lead to Christopher being hurt. He watched on numerous occasions his brother be mental-

hygiene arrested by the police. Christopher believes that his mother was not able to handle his older siblings and therefore was neglectful as a parent to Christopher. His parents never married and did not live together. By second grade Christopher was getting in trouble, leaving school, and had his first of mental hygiene arrest. Chris's behavior and mental health issues worsened over time which led to more issues in school, additional mental hygiene arrests and eventually threats of suicide and suicide attempts. Chris's grandmother, who also suffered from serious mental health problems, suffered a very serious burn that left her face disfigured. That had a traumatic impact on Christopher and was a contributing factor to his thoughts of suicide. In or around 2004 and 2005, Christopher began seeing a therapist through St. Mary's Hospital. Around that same time Christopher's mother could no longer manage him so he went to live with his father. His father used physical discipline that would involve beatings with a belt or extension cord. When his father could not control him any longer, Christopher ended up being placed in Hillside Children's Center. He did not adjust well to Hillside and often would end up in physical restraints.

      In or around 2006 Christpoher was placed in a foster home and for the first time in his life had a sense of stability and support. His foster family enrolled him in Gates Chili School District, cared for all of his needs both physically and emotionally, took him on camping and fishing trips and showed him love and kindness that he desperately needed. He initially adjusted well to his new environment. Unfortunately, a series of events occurred that led to Chris falling back into his old life. While at Gates Chili Chris met some friends that turned out to be bad influences. He started smoking weed with and getting in to trouble with them. He began acting out in his foster home, stealing from his foster-mother and redeveloping some bad behaviors. Today Christopher looks back on his time with his foster family and feels terrible guilt and

regret. He feels guilt for the way he ended up treating them, and regret for squandering a wonderful opportunity to take his life in a different direction. Eventually Christopher was discharged back to his biological mother and within 30-days he was mental-hygiene arrested. Christopher descended into drug addiction and ultimately found himself on his own without any vision for a bright future, no plan for his life, suffering from deep depression and substance abuse.

Christopher began getting into relationships with women for the wrong reasons. He was searching for someone to give him what he believed he needed from his mother. His selfish approach to these relationships led to domestic violence issues, which led to violations of orders of protection, which led to his significant criminal history category rating in the instant case. Looking back, Christopher sees how selfish he was. Even though in many of the relationships the orders of protection were used as a sword against him (often he would be brought back into the relationship until a fall out, and then the police called), he fully acknowledges his own poor choices that led him to the place he is at today.

## Nature and Circumstances of the Offense

The Court is aware of the general circumstances surrounding the events of May 30, 2020 where protests led to rioting, property damage and unrest within the City of Rochester as well as throughout the nation in the wake of the death of George Floyd in Minneapolis, Minnesota. Christopher's confessed involvement, however, was not politically motivated nor was it in response to national events. Just prior to the protests Christopher had gotten into an argument with his girlfriend. They argued all night long and finally Christpoher was kicked out of the

house.  He went to stay with a friend following the incident.  In addition to the turmoil within his relationship and getting kicked out of his home, the lockdowns imposed in response to COVID-19 further frustrated Christopher.  While he was driving around with his friend they came upon the protests in Downtown Rochester and saw the growing unrest amongst the crowd.  Christopher made a poor decision to vent his frustrations and anger by joining in the conduct that led to his Riot charge. He fully acknowledges his actions, admits that he was wrong, and understands that he should not have engaged in the conduct no matter what the reasons might have been.

Following his arrest and eventually plea to the Riot charge Christopher was released with conditions, one of which was to return to Court for sentencing.   While out of custody, Christopher reconnected with his girlfriend, who had a child that was alleged to be Christopher's daughter.  Christopher very much wanted to be part of his daughter's life, and his girlfriend encouraged him to do so.  They began talking on the phone and making plans for Christopher to meet the baby.  Eventually they started to meet, however at some point Christopher and his girlfriend began to argue again, leading to his girlfriend making a complaint which led to a Harassment 2nd violation charge being filed against him.  Again the two reconciled for a time, but when things started to fall apart again, his girlfriend made a complaint that Chritopher had violated the Order of Protection that directed Christopher to have no contact with her.  Christopher was distraught and believed that he had violated his plea agreement conditions, violated his supervised release conditions, and was going to go to prison.  He panicked, removed his ankle monitoring device and again ended up back with his girlfriend and daughter.  He remained with them until she once again got upset with Christopher, called the police, and this time he was arrested on the warrant from federal court and a new criminal contempt charge.

Since his arrest, Christopher has remained in custody. He has since learned that his ex-girlfriend's child is not his daughter, and he again has incredible regret for his decisions. He knows that had he continued to abide by the terms of his plea agreement and returned to Court when directed, he would likely not be facing additional time in prison. His co-defendants on the Riot charge received sentences of 30-months and 16-months.

## Post-Arrest Conduct

Christopher has also struggled while incarcerated waiting for his sentencing. He entered a plea to the Bail Jumping charge and has remained detained ever since. While in custody at the Monroe County Jail, word was being spread by other inmates that he was a cooperator with the government. Despite the fact that he is not receiving any cooperation credit, the rumor caused significant hardships for Christopher. As a result, he was told by other inmates that he needed to jump another inmate, otherwise he would be attacked. Christopher resisted, but the threats became more serious and severe. He reported the issue to deputies in the jail, however he was told there was nothing they can do, and he was actually moved from secure detention in to an area where the people that were threatening him were being housed. An altercation ended up happening and the confrontation led to a fight which ultimately sent Christopher back into secure detention. Christopher was suffering such despair that he attempted to commit suicide by hanging himself. He was discovered hanging by deputies and was rescued. He reached out to counsel regarding what was happening to him in the jail, about his suicide attempt, and asked if there was some way he could be protected from the other inmates. Counsel immediately reached out to the US Attorney's Office regarding his concerns, specifically in regards to Christopher being targeted as a "cooperator." Eventually Christopher was moved to the Northeast Ohio Correctional Facility where he has remained without incident.

Christopher very much wants help. He has grown and matured during this case in the sense that he recognizes in himself the need for help. He is very articulate, intelligent, and aware of his circumstances. He never wants to be incarcerated again, he recognizes it is his own actions and choices that has led him to this place, and he is motivated to commit to recovery. This Court, in considering what is a just and appropriate sentence for Christopher, should consider Christopher's need for supervision and treatment over any need for lengthy incarceration.

## Conclusion

Based on the foregoing, it is respectfully submitted that a sentence of no more than 60-months is sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

DATED: September 20, 2023  
Rochester, New York

Ganguly Brothers, PLLC  
BY:

*s/Avik K. Ganguly*  
Avik K. Ganguly, Esq.  
Attorney for Defendant  
The Park at Allens Creek  
140 Allens Creek Road, Suite 220  
Rochester, NY 14618  
(585) 232-7747  
avik@gangulylaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,                    CERTIFICATE OF SERVICE

    v.

CHRISTOPHER TINDAL,                          6:21-CR-06038-001
                                                  6:23-CR-06085-001

        Defendant.

---

### Certificate of Service

On September 20, 2023 I served the foregoing Sentencing factors Statement via PACER. In addition I serviced a copy to Cassie M. Kocher, AUSA, via electronic mail.

DATED: September 20, 2023                 Ganguly Brothers, PLLC
        Rochester, New York               BY:

                                                            s/Avik K. Ganguly
                                                             Avik K. Ganguly, Esq.
                                                             Attorney for Defendant
                                                             The Park at Allens Creek
                                                              140 Allens Creek Road, Suite 220
                                                              Rochester, NY 14618
                                                              (585) 232-7747
                                                             avik@gangulylaw.com